UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BABAK MOVAHEDI,<br><br>    Plaintiff,<br><br>       v.<br><br>US BANK, N.A., *et al.*,<br><br>    Defendants. | Civil Action No. 11-1761 (CKK) |

**MEMORANDUM OPINION**
(March 27, 2012)

Plaintiff Babak Movahedi, filed suit against U.S. Bank, N.A., as Trustee for the Chevy Chase Funding, LLC Mortgage Backed Certificates, Series 2005-3, and Capital One Bank, N.A. Although Plaintiff does not articulate any specific causes of action, the Complaint in general terms alleges Defendants wrongfully foreclosed on Plaintiff's property and subsequently denied Plaintiff access to the property to recover certain furnishings. Presently before the Court is Defendants' [5] Motion to Dismiss. The motion is now fully briefed and ripe for adjudication.[1] For the reasons stated below, Defendants' Motion is GRANTED IN PART and DENIED IN PART. Defendants' motion is GRANTED as to Plaintiff's claims for wrongful foreclosure, wrongful eviction, and conversion of rental payments and DENIED as to Plaintiff's claims for conversion of furnishings and unjust enrichment.

**I. BACKGROUND**

Plaintiff is the owner of "residential property" located at 1700 Q Street in Northwest

---

[1] See Defs.' Mot. to Dismiss ("Defs.' Mot."), ECF No. [5]; Pl.'s Opp'n, ECF No. [8]; Defs.' Reply, ECF No. [10].

Washington, D.C. Compl. ¶ 1. In May 2005, Plaintiff borrowed $1,432,750 from Chevy Chase Bank, F.S.B., secured with a Deed of Trust on the property. Defs.' Ex. A (Adjustable Rate Note), at 1; Defs.' Ex. B (Deed of Trust). While residing at the property, Plaintiff installed "three unique antique chandeliers as well as other furnishings." Compl. ¶ 8. In 2010, Plaintiff began leasing the property to a number of tenants. *Id.* at ¶ 9. On July 14, 2010, Plaintiff received a Notice of Foreclosure from Capital One Bank ("Capital One"). *Id.* at ¶ 10. Plaintiff alleges that over the next several months, Capital One noticed and cancelled several foreclosure auctions while the bank considered a short sale offer to purchase the property. *Id.* at ¶¶ 11-12. On October 18, 2010, Capital One issued a foreclosure notice indicating the property would be sold at auction on November 23, 2010. *Id.* at ¶ 13. Plaintiff claims he assumed this sale "like previously set dates, was cancelled pending negotiations" for the sale of the property to the short sale purchaser. *Id.* At 11:30 AM the day of the foreclosure sale, Plaintiff received a call informing him that the short sale was not approved. *Id.* at ¶ 14. One hour later, "Defendant, Capital One, NA took back the Property on reserve bid of $1,014,081.39—$300,000 *less than the short sale offer presented to the Defendants*." *Id.* at ¶ 16 (emphasis and errors in original).[2] Capital One purportedly failed to inform Plaintiff that the sale had taken place. *Id.* at ¶¶ 17-18.

In December 2010, Plaintiff responded to a maintenance request from a tenant, and installed a new washing machine and arranged for repairs to the heating system at the property. *Id.* at ¶ 19. Upon attempting to collect rent from the tenants in January 2011, Plaintiff discovered the foreclosure sale actually took place in November 2010. *Id.* at ¶ 20. U.S. Bank

---

[2] Despite this allegation, the Trustee's Deed transferring ownership of the property, as well as Plaintiff's later allegations in the Complaint indicate U.S. Bank purchased the property at the foreclosure sale. Pl.'s Ex. 1, at 1; Compl. ¶¶ 21, 23.

recorded the transfer of the Deed of Trust on February 9, 2011, and has since denied Plaintiff access to the property. *Id*. at ¶ 22. Plaintiff filed suit in the Superior Court for the District of Columbia on September 13, 2011. Defendants removed the action to this Court on the basis of diversity jurisdiction and filed the instant motion to dismiss.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides that a party may challenge the sufficiency of a complaint on the grounds it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When evaluating a motion to dismiss for failure to state a claim, the district court must accept as true the well-pleaded factual allegations contained in the complaint. *Atherton v. D.C. Office of Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009), cert. denied, 130 S. Ct. 2064 (2010). "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Rather, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Additionally, in deciding a Rule 12(b)(6) motion, a court may consider "'the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint,'" *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011) (quoting *Gustave–Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002)), or "'documents upon which the plaintiff's complaint necessarily relies' even if the document is produced not by [the

parties]," *id.* (quoting *Hinton v. Corr. Corp. of Am.*, 624 F. Supp. 2d 45, 46 (D.D.C. 2009)).

## III.  DISCUSSION

Before addressing the specific claims in this case, Defendants urge the Court to dismiss the Complaint (at least in part) on two grounds.  First, Defendants urge the Court to dismiss the Complaint for failure to allege any specific causes of action.  Although the Court agrees the Complaint is far from well-pleaded, the Complaint can be reasonably construed to include a "short and plain statement" of four claims: (1) wrongful foreclosure; (2) wrongful eviction; (3) conversion; and (4) unjust enrichment.  Fed. R. Civ. P. 28(a)(2).  Second, Defendants contend U.S. Bank should be dismissed as a Defendant because there are no specific allegations against U.S. Bank in the Complaint.  Defendants overlook the allegations in the Complaint that specifically allege U.S. Bank has denied Plaintiff access to the property to recover his personal property.  Compl. ¶ 23.  Moreover, at the point the Complaint alleges U.S. Bank purchased the property at the foreclosure sale, the reference to "Defendants" in allegations regarding post-sale conduct can reasonably be construed to include U.S. Bank.  Finally, the Court notes that ownership of the note and the relationship between the Defendants and the original lender is complex to say the least.  *See* Defs.' Reply at 3 n.3.  The Court declines to penalize Plaintiff for any errors in referring to the proper Defendant when the Defendants themselves did not understand their relationship to the note until filing their reply brief.  *Id.*  In terms of the specific claims at issue in this case, as explained below, based on the allegations in the Complaint, Plaintiff fails to state a claim for wrongful foreclosure, wrongful eviction, and conversion of rental payments.  At this stage of the proceedings Plaintiff has stated a claim for conversion of furnishings and unjust enrichment.

*A.     Wrongful Foreclosure*

Plaintiff's Complaint initially asks the Court to set aside the foreclosure sale based on a litany of purported errors with the notice of foreclosure and the sale itself. None of these contentions are persuasive. First, Plaintiff alleges Capital One Bank did not have authority to foreclose on the property because there was no recordation of the transfer of the Deed of Trust from Chevy Chase Bank to Capital One, the latter of which is listed as the note holder on the Notice of Foreclosure. Defs.' Ex. C (Notice of Foreclosure Sale), at 1. Defendants contend that Capital One, as the loan servicer, was the agent of the lender and therefore authorized to proceed with the foreclosure. On a motion to dismiss however, the Court cannot dismiss this claim based on Defendant's bare assertion that it was an agent of the lender.[3] Nevertheless, the Court agrees that this is not a basis on which the Court can invalidate the sale. Under District of Columbia law, a notice of intent to foreclose on a property must be issued by the holder of the note or its agent. D.C. Code § 42-815(c)(1)(A). The Notice of Foreclosure Sale in this case was issued by David N. Prensky, Defs.' Ex. C. at 2, who is also listed as the lender's Trustee on the original Deed of Trust, Defs.' Ex. B at 2. Any transfer of ownership of the note notwithstanding, based on the face of the Deed of Trust, the Notice of Foreclosure was issued by the note holder's agent, thus Plaintiff's claim of wrongful foreclosure on this basis must fail.

Second, Plaintiff alleges the Notice of Foreclosure was invalid because it failed to state a "cure" or reinstatement amount necessary for the Plaintiff to avoid foreclosure. Plaintiff clarifies

---

[3] The Court could not even grant summary judgment on this issue at this time because the evidence provided to the Court by Defendants indicates Capital One assumed ownership of the note through the merger with Chevy Chase Bank, *not* that Capital One was the loan servicer as Defendants newly contend in their reply. Defs.' Reply at 3 n.3.

this allegation in his Opposition by claiming the cure amount was impermissibly vague insofar as it failed to state the specific amount of "attorney's fees, foreclosure costs, and all other charges and accruals" owed in addition to the deficiency in the loan payments. Pl.'s Opp'n at 5-6; Defs.' Ex. C, at 1. As Defendants note, "a complaint may not be amended by the briefs in opposition to a motion to dismiss." *Arbitraje Casa de Cambio, S.A. de C.V. v. U.S. Postal Serv.*, 297 F. Supp. 2d 165, 170 (D.D.C. 2003). The new allegation regarding attorney's fees and costs cannot save the Complaint from dismissal. Even if the Court considered this allegation as part of the Complaint, the claim would still fail.

Section 42-815.01 of the D.C. Code provides that, with certain limitations, the mortgage debtor must be given the opportunity to "cure" the default of the mortgage once a notice of foreclosure has been issued. In order to cure the default, the debtor must (1) pay all sums required to bring the account current; (2) perform any other obligation the debtor would have been required to perform but for the default; and (3) pay "any expenses properly associated with the foreclosure and incurred by the mortgagee *to the date of debtor's payment or tender under this section.*" D.C. Code § 42-815.01(c)(1)-(3). By rule, the notice of foreclosure must include the "minimum balance required to cure default obligation." D.C. Code § 42-815(c)(2) (incorporating by reference Notice of Foreclosure Sale of Real Property or Condominium Unit, *available at* http://otr.cfo.dc.gov/otr/frames.asp?doc=/otr/lib/otr/rod_move/rod-14.pdf). Plaintiff's allegation would require a mortgagee to identify the exact amount of attorney's fees and other expenses (such as advertising costs) *before* those costs are actually incurred by the mortgagee. Under the statute, the Plaintiff can cure the default at any point between receipt of the notice and five business days prior to the foreclosure sale itself. D.C. Code § 42-815.01(b).

6

The amount of attorney's fees and expenses Plaintiff must tender will depend on the point in time that Plaintiff brings the account current. It is simply impossible for a mortgagee to indicate a cure amount with the specificity Plaintiff would demand. The Notice of Foreclosure in this case stated the amount Plaintiff was required to pay to bring the mortgage current, and also noted Plaintiff would also have to pay reasonably attorney's fees and expenses. There is no statutory or regulatory basis for requiring additional information from Defendants, therefore Plaintiff cannot state a claim for wrongful foreclosure on this basis.

Third, Plaintiff alleges that the foreclosure sale was invalid because Defendants failed to acquire a "certificate of mediation" before issuing the Notice of Foreclosure. D.C. Code § 42-815(b)(2). Defendants contend the mediation requirement is inapplicable to this case because (1) the Notice of Foreclosure was issued before the District of Columbia passed the mediation requirement; and (2) mediation is only required for residential mortgages, and Plaintiff's loan does not meet the definition of "residential mortgage." As an initial matter, this allegation appears nowhere in Plaintiff's Complaint, and thus cannot defeat a motion to dismiss. In any case, the mediation requirement was not in effect when the foreclosure sale itself took place, much less when the notice was issued. *See* 57 D.C. Reg. 12404, 12411 (Dec. 9, 2010). Mayor Adrien Fenty did not sign the act until December 9, 2010, over two weeks after the property was sold, and the mediation requirement did not go into effect until March 12, 2011. *See Id.* Therefore Defendants were not required to obtain a mediation certificate before issuing the Notice of Foreclosure or completing the sale itself.

Fourth, Plaintiff contends that, relying on the previous notices of and subsequent cancellation of several foreclosure sales, he did not think the foreclosure sale would take place

7

on November 23, 2010 as the notice indicated. The Court understands Plaintiff to essentially argue that Capital One was equitably estopped from carrying out the foreclosure sale. In order to state a claim for equitable estoppel in this context, the Plaintiff must allege: "(1) conduct amounting to a false representation or concealment of material fact (2) made with actual or constructive knowledge of the true facts, and (3) with the intention that another person act in reliance upon it; (4) the other person's lack of knowledge and of the means of knowledge concerning the truth of the representation, (5) and his reliance upon the mis-representation, (6) causing him to act so as to change his position prejudicially." *Cassidy v. Owen*, 533 A.2d 253, 255 (D.C. 1987). Assuming without deciding, Plaintiff has sufficiently pled the first five elements, the Complaint is entirely devoid of any allegation that, if he had known the foreclosure sale was going to take place, Plaintiff could have or would have tried to stop the sale, or even purchase the property himself. *But cf. Cassidy*, 533 A.2d at 255 (denying summary judgment where plaintiff argued she would have tendered the cure amount to prevent a foreclosure sale but for the bank's misrepresentations). Absent any allegation of *detrimental* reliance on Defendants' representations, Plaintiff fails to state a claim for equitable estoppel.

Fifth, Plaintiff alleges the foreclosure sale should be set aside because the Defendants "fail[ed] to maximize the sale price" for the property. Compl. ¶ 31. The only factual basis for this claim is that the sale price at auction, $1,014,081.39, was $300,000 less than the short sale offer presented to Capital One Bank. *Id.* at ¶ 16. "Unless the price at which the property was sold was so grossly inadequate as to shock the conscience . . . and raise a presumption of fraud, the sale must stand." *Nat'l Life Ins. Co. v. Silverman*, 454 F.2d 899, 916 (D.C. Cir. 1971) (quoting *Cromer v. DeJarnette*, 188 Va. 680, 51 S.E.2d 201, 204 (1949)). In *Silverman*, the

Court of Appeals agreed with the district court's finding that a foreclosure sale price of $900,000 on a $1,300,000 note (approximately 69.2%) "was not insufficient in amount so as to constitute a legally inadequate price." *Id.* at 916. Given the variables at play in foreclosure sales that may depress prices, the Court , is "usually not warranted in invalidating a sale that yields in excess of [20% of the fair market value]." *See* Restatement (Third) of Property § 8.3 cmt. b (2011). Comparing the sale price in this case to the face value of the note ($1,432,750) or the short sale offer ($1,314,000),[4] the sale price was approximately 70.8% of the face value of the note, and 77.1% of the short sale offer on the property. As a matter of law the final bid for Plaintiff's property at the foreclosure auction was not inadequate. Absent other defects in the foreclosure sale (*id.*, § 8.3 cmt c), the Plaintiff does not and cannot allege the sale price in this case was so deficient as to warrant invalidating the sale, and this claim must be dismissed.

Sixth, in his Opposition, the Plaintiff for the first time alleges the foreclosure sale was fraudulent insofar as "no payment was actually required because U.S. Bank was acting in concert with Capital One, N.A." Pl.'s Opp'n at 8. Plaintiff would do well to note that an exchange of funds is not necessarily required for valid foreclosure sales. *Id.*, § 8.3 cmt a (noting a mortgage lender "can 'credit bid' up to the amount of the mortgage obligation without putting up new cash"). Regardless, because this allegation appears nowhere in the Complaint, it cannot defeat the motion to dismiss.

Finally, Plaintiff alleges the foreclosure sale should be invalidated because the transfer of the Deed of Trust to U.S. Bank as the purchaser at the sale was not recorded within thirty days of

---

[4] Plaintiff never states the exact short sale offer, the Court estimated the offer based on the allegations in the Complaint.

execution as required by District of Columbia law. However, Plaintiff provides no statutory or other support for the notion that the failure to record a deed *after* a foreclosure sale provides a basis on which the Court can invalidate the sale itself. With no viable allegation on which to base a claim for wrongful foreclosure, Plaintiff's initial claim for relief must be dismissed.

    *B.*    *Wrongful Eviction*

Plaintiff's second cause of action alleges Defendants wrongfully evicted Plaintiff from his property by failing to serve him with a "30-Day Notice to Quit." Compl. ¶ 28. "In order to establish wrongful eviction, a tenant must prove that the landlord performed 'some act of a permanent character with the intention and effect of depriving the tenant of the enjoyment of the demised premises or a part thereof.'" *Hinton v. Sealander Brokerage Co.*, 917 A.2d 95, 101 (D.C. 2007) (quoting *Int'l Comm'n on English in Liturgy v. Schwartz*, 573 A.2d 1303, 1305 (D.C. 1990)). The initial flaw in Plaintiff's claim for wrongful eviction is that Plaintiff, by his own admission, did not reside at the property at the time the foreclosure sale took place. Compl. ¶¶ 8-9. Although the statutory eviction provisions of District of Columbia law "protect the *tenant* of a defaulting mortgagor who remains in her previously rented apartment after a foreclosure sale," Plaintiff provides no authority for the contention that Defendants were required to provide the non-resident owner of the property with notice to quit. *Banks v. E. Sav. Bank*, 8 A.3d 1239, 1243 (D.C. 2010). Plaintiff's claims for conversion and unjust enrichment aside, Plaintiff fails to state a claim for wrongful eviction from the rental party where he admittedly did not reside.

    *C.*    *Conversion*

Plaintiff's third cause of action alleges Defendants wrongfully converted Plaintiff's

personal property, specifically rent collected from the tenants and certain furnishings installed at the property. In order to state a claim for conversion, Plaintiff must allege "(1) an unlawful exercise, (2) of ownership, dominion, or control, (3) of the personal property of another, (4) in denial or repudiation of that person's rights thereto." *O'Callaghan v. District of Columbia*, 741 F. Supp. 273, 279 (D.D.C. 1990). Initially, at the point Plaintiff fails to state a claim for wrongful foreclosure, Plaintiff cannot challenge Defendants' collection of rent from Plaintiff's (former) tenants as an unlawful exercise of ownership dominion or control. "[A] foreclosure sale of property extinguishes any subordinate leases with the mortgagor and the tenants who remain on the property stand as tenants-at-will in relation to the new owner." *Banks,* 8 A.3d at 1243 (internal quotation marks omitted).[5] Therefore Defendants properly collected and processed the payments from the tenants after the foreclosure sale, and Plaintiff has no claim for conversion of the rental payments. *See also Hyde v. Brandler*, 118 A.2d 398, 400 (D.C. 1955) ("[R]ent accrued on its due date, that is, when it became due and payable.").

In terms of Plaintiff's "personal property" at the real property in question, Plaintiff has sufficiently pled a claim for conversion of the furnishings in question. Defendants correctly point out that "[a]bandonment of personal property is a complete defense to an action for conversion." *Block v. Fisher*, 103 A.2d 575, 576 (D.C. 1954). Defendants argue that Plaintiff abandoned the furnishings when he "left the chandeliers and washing machine in the property following a properly noticed foreclosure sale." Defs.' Reply at 8. "To constitute abandonment there must be an intent to abandon and an act or omission by which such intention

---

[5] The Complaint offhandedly suggests Defendants "wrongfully interfered with the lease contracts between Plaintiff and his Tenant." Compl. ¶ 30. Since the foreclosure terminated any contract Plaintiff might have had with his tenants, any claim for tortious interference fails.

is put into effect." *Id.* at 575-76. Taking the allegations in the Complaint as true for purposes of this motion, Plaintiff did not believe the foreclosure sale would take place, and thus did not intend to abandon the furnishings by not removing them before the date of the sale. *See Independence Fed. Sav. Bank v. Huntley*, 573 A.2d 787, 788 (D.C. 1990) (finding plaintiff provided sufficient evidence to support claim for conversion of personal property where plaintiff had actual knowledge of the foreclosure sale at issue).

Defendants also contend that the furnishings at issue are "fixtures" that transferred with the real property as part of the foreclosure sale. "In determining whether an item is a fixture, the intent of the party attaching it to the realty is the primary test, the one of paramount importance, and has been said to be controlling." *LeRoy Adventures, Inc. v. Cafritz Harbour Grp., Inc.*, 640 A.2d 193, 201 n.12 (D.C. 1994) (internal quotation marks omitted). Defendants contend that Plaintiff intended the furnishing to become a permanent part of the property "because he necessarily attached them physically to the realty." Defs.' Opp'n at 8-9. Defendants' approach would eviscerate the intent inquiry and replace it with a bright line rule that anything physically attached to real property is necessarily a fixture. The District of Columbia has rejected such a strict construction of "fixture." It is the parties' intent when attaching the furnishings that governs. *E.g.*, *LeRoy Adventures*, 640 A.2d at 200-01 (finding HVAC system was not a fixture because the tenant did not intend to permanently annex the system to the real property). Plaintiff alleges in the Complaint that he did not intend for the furnishings to become permanent fixtures of the property at the time he installed them, which the Court must take as true for purpose of this motion. Compl. ¶ 32. Therefore, Plaintiff sufficiently alleged that the furnishings are not fixtures and can proceed with his claim for conversion of the furnishings.

### D.     *Unjust Enrichment*

Plaintiff's fourth and final cause of action alleges Defendants were unjustly enriched by Plaintiff's installation of a washing machine and performance of repairs at the property after the sale.[6] "Unjust enrichment occurs when a person retains a benefit (usually money) which in justice and equity belongs to another." *4934, Inc. v. D.C. Dep't of Emp't Servs.*, 605 A.2d 50, 55 (D.C. 1992). "A claim of unjust enrichment does not require fault on the part of the recipient of the benefit." *Id.* at 56. Defendants move to dismiss this claim on the grounds that Plaintiff cannot sustain this quasi-contract claim where a contract actually exists between the parties. Defs.' Opp'n at 9. Defendants are correct that when the claim for unjust enrichment is based on the terms of the contract, a claim for unjust enrichment is unavailable. *Albrecht v. Comm. on Emp. Benefits of Fed. Reserve Emp. Benefits Sys.*, 357 F.3d 62, 69 (D.C. Cir. 2004); *see also United States v. Kellogg Brown & Root Servs.*, 800 F. Supp. 2d 143, 160 (D.D.C. 2011) (finding plaintiff could not sustain claim for unjust enrichment based on wrongful payment where neither party contested the validity of the contract between the parties). In this case, Plaintiff does not allege Defendants were unjustly enriched under the terms of the contract. Rather, Plaintiff's claim is based on conduct that occurred after the event authorized by the contract (the foreclosure sale), and that would not have been governed by the terms of the contract at any point in time. Therefore, Plaintiff can proceed with his claim for unjust enrichment based on the installation of the washing machine and HVAC repairs performed after the foreclosure sale.

---

[6] Contrary to Defendants' assertion, Plaintiff explicitly pled this claim in the Complaint. Compl. ¶ 29 ("Defendants have been unjustly enriched by the *post foreclosure* installation of the washing machine and the HVAC heating work paid for by Plaintiff.").

## IV.  CONCLUSION

For the foregoing reasons, Defendants' [5] Motion to Dismiss is GRANTED IN PART and DENIED IN PART.  Plaintiff failed to allege any facts that would support a claim for wrongful foreclosure or wrongful eviction.  Moreover, Plaintiff cannot recover for conversion of rental payments absent a valid claim to set aside the foreclosure.  Plaintiff has sufficiently alleged a claim for conversion of the furnishings Plaintiff installed at the property and remained after the foreclosure sale.  Finally, since Plaintiff's claim is not based on the terms of the mortgage contract, Plaintiff can pursue his claim for unjust enrichment for the installation of the washing machine and repairs to the property made after the foreclosure sale.  Therefore Defendants' motion is GRANTED as to Plaintiff's claims for wrongful foreclosure, wrongful eviction, and conversion of rental payments and DENIED as to Plaintiff's claims for conversion of furnishings and unjust enrichment.

An appropriate Order accompanies this Memorandum Opinion.

Date:   March 27, 2012

>  */s/*
> **COLLEEN KOLLAR-KOTELLY**
> United States District Judge